**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 12 2005**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

CHRISTOPHER B. ATKINSON,

      Defendant-Appellant.

No. 04-8093

(D.C. No. 04-MJ-27-J)
(D.Wyo.)

ORDER AND JUDGMENT[*]

Before **BRISCOE, LUCERO,** and **MURPHY**, Circuit Judges.

After examining the briefs and appellate record, this panel agrees with counsel that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). This case is therefore ordered submitted without oral argument.

Christopher B. Atkinson appeals his conviction for violating 36 C.F.R. § 4.23(a)(1) while driving in Yellowstone National Park. This regulation provides that

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

"[o]perating or being in actual physical control of a motor vehicle is prohibited while . . . [u]nder the influence of alcohol, or a drug, or drugs, or any combination thereof, to a degree that renders the operator incapable of safe operation." Id. The magistrate court first determined Atkinson's guilt following a bench trial and the district court affirmed the magistrate court's ruling. Atkinson contends on appeal that the district court erred in refusing to set aside the verdict due to insufficient evidence.[1] We exercise jurisdiction to 28 U.S.C. § 1291 and affirm.

We review *de novo* the sufficiency of the evidence supporting a criminal conviction. U.S. v. Hardridge, 379 F. 3d 1188, 1196 (10th Cir. 2004). In that review, we view the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the government. Id. We will not disturb the verdict unless no rational trier of fact could have found the defendant guilty. Id.

---

[1] Atkinson also argues that the district court improperly relied upon 36 C.F.R. § 4.23(a)(2) in affirming the magistrate judge's determination, in particular a provision that allows for the assimilation of state law, in this case Wyoming law, which Atkinson was neither charged with nor convicted of violating. It is unnecessary to consider whether the district court erred in considering 36 C.F.R. § 4.23(a)(2) because sufficient evidence supports Atkinson's conviction under 36 C.F.R. 4.23(a)(1).

As part of his argument that Wyoming law should not be applied, Atkinson contends that it is unclear where this offense occurred: "[T]he record is utterly bereft of evidence that the alleged illegal operation of the motor vehicle occurred at any time in Wyoming, as opposed to nearby Montana or anywhere else for that matter." Appellant Brief at 15. Atkinson, however, does not argue that the court was without jurisdiction but rather states the court had jurisdiction. Nevertheless, as Atkinson's contention raises jurisdictional concerns, we note that the offense at issue occurred immediately outside the courthouse for the District of Wyoming that is located in Yellowstone National Park.

2

As applied to the facts of this case, the elements of 36 C.F.R. § 4.23(a)(1) are: (1) the defendant was operating a motor vehicle; (2) while under the influence of alcohol to a degree that rendered the defendant incapable of safely operating the vehicle; and (3) within the boundaries National Park Service lands.[2]

Atkinson contends there was insufficient evidence to prove that he was illegally impaired "*at the time of operation* of a motor vehicle." Aplt. Br. at 8. He argues there was no evidence that he was intoxicated when operating the vehicle and that the trial court erred in failing to consider the effect of the alcohol he consumed after he stopped driving on his breath alcohol level.

Employed as a trail work leader by the Park Service, Atkinson awoke at 4:30 a.m. on the morning of August 6, 2003, and hiked for approximately twenty-one miles, then completed paperwork and conversed with his supervisor, before finishing his work day at 9:30 p.m. At around 10 p.m., Atkinson joined other trail workers at the Two Bit Saloon where, by his own admission, he consumed two pints of beer. In addition to the two pints of beer, Atkinson's friend Erik Brewster also recalled buying Atkinson a shot. At around 12:30 a.m., Atkinson and Brewster walked to another bar, the Blue Goose. Atkinson testified that at the Blue Goose, he had a shot, probably of "Hot Damn," a fiery drink similar to cinnamon schnapps. Atkinson testified that, after finishing his drink, he waited

---

[2] The precise territorial scope of 36 C.F.R. § 4.23 is set forth in 36 C.F.R. §§ 1.2; 4.1 and is not at issue in this case.

about an hour, drinking only water, playing a few games of pool, before he drove Brewster back to the residential trailers in Mammoth.

On the way to the residential trailers, the two saw an elk in front of the Mammoth Post Office. In attempting to see the elk again, Atkinson made a "roundabout," which caused his tires to squeal. The squealing tires alerted Yellowstone Park Ranger Joseph Bueter, who was working in his office.[3] Bueter then watched as the car went around the island in front of the Post Office, directly across from the courthouse.

Bueter ran to his vehicle and followed Atkinson's car. According to Bueter, Atkinson's car appeared to be going more than sixty miles per hour in an area with a speed limit of twenty-five. Atkinson's vehicle turned into the YCC camp, heading towards the residential trailer area. When Bueter approached the trailer area, where the road became a gravel or deteriorated path, he encountered a dense cloud of dust, which was caused by Atkinson's vehicle hitting the surface at a high rate of speed.

Because Bueter was unsure if Atkinson's vehicle had lost control or spun out, he slowed down and drove into the dust cloud, taking the first left down a row of trailers. Driving about two hundred yards along a row of trailers, he did not see any movement. Reaching the lower end of the trailer court, he turned and drove back up, but still did not see any movement. Bueter parked his car, got out, and listened. He heard voices, so he walked between the trailer houses towards the voices and into the next row of trailers,

---

[3] Bueter's office is located in the Yellowstone National Park courthouse.

4

which is where he encountered Atkinson. Bueter testified the total time between his initial encounter with the dust cloud and encountering Atkinson was "sixty to 90 seconds, probably." ROA, Vol. III, at 41.

When Bueter stopped and talked with Atkinson and Brewster, they were walking away from the vehicle. They stated "they had just come home from the Blue Goose and that they were walking to Mr. Brewster's residence." Id. Atkinson conceded that he had been driving the vehicle and also that he had been drinking.

Bueter conducted a three-part standardized field sobriety test and a preliminary breath test (PBT). On the first part of the field sobriety test, "the walk and turn," Atkinson scored three out of eight, with three clues showing impairment out of eight possible points. The three clues of impairment were "his inability to maintain his balance during the instructional phase, using his arms for balance, and stepping off the line." Id. at 16-17. On the second part, "the one-leg stand," Atkinson scored two out of a possible four points. The two clues of impairment were "using his arms for balance and putting his foot down." Id. at 17. On the third part, "the Horizontal Gaze Nystagmus," Atkinson "exhibited all six clues, each of the three clues in each eye, for a total of six points." Id. As for the PBT, the initial sample showed a level of .072. However, Bueter testified the sample was insufficient to insure an accurate result because Atkinson either did not blow hard enough or long enough to deliver a sufficient sample. Asked what effect this insufficient sample would have, Bueter testified that "the insufficient sample would

5

indicate that the blood alcohol was at least and probably in excess of its display value. So that would mean the .072 was the lowest his blood alcohol, but with a sufficient sample it would be at least that, if not higher." Id. at 18. Bueter then took Atkinson to the jail for an additional test using the more precise Intoxilizer 5000. Id. at 18, 21-22. The results of this test showed Atkinson's actual breath alcohol level to be 0.146

Atkinson insisted, however, that his breath alcohol level was higher when measured on the Intoxilizer because he and Brewster had several drinks of whiskey after they returned to Brewster's trailer and before they encountered Bueter. Thus, Atkinson insisted, his blood alcohol level was lower while driving, as reflected in the PBT.

The magistrate judge rejected Atkinson's explanation for his high alcohol level. "[A] very short period of time would have taken place from the time [Bueter] entered the roadway until he got out and heard the voices, and he went over through the trailers and made contact with the defendant and Mr. Brewster." Id. at 132. The magistrate judge did not believe that Brewster and Atkinson "had enough time for two of them to go to the bathroom separately, one after the other, and to stand there and trade two or three swigs out of a bottle of whiskey that contained approximately two inches, and then to walk out and make contact with Ranger Bueter." Id.

Regarding the field sobriety tests, the magistrate judge found that Atkinson "did poorly on all of them, and all but the Horizontal Gaze Nystagmus might possibly be explained on his activities during the day where he had hiked quite a considerable

6

distance. That scoring six out of six on the Horizontal Gaze Nystagmus cannot be explained by overexertion or by allergies, and he did not say that he'd taken any Benadryl that day . . .." Id. at 133.[4] The magistrate judge noted Atkinson never mentioned to Bueter the whiskey that he allegedly drank when detailing his evening's alcohol consumption. Ultimately, the magistrate judge found Atkinson "guilty of driving under the influence of an intoxicating beverage to a degree which rendered [him] incapable of safely operating that motor vehicle." Id. at 134.

We conclude there was sufficient evidence to support the magistrate judge's determination that Atkinson was driving while intoxicated to such a degree as to render him incapable of safely operating a vehicle in violation of 36 C.F.R. § 4.23(a)(1). In particular, the magistrate judge's finding that the version of events offered by Atkinson and Brewster could not have occurred within the time period between Bueter losing track of them and finding them approximately ninety seconds later is a determination that a rational fact-finder could reach. Moreover, the matter of credibility, which was crucial in this case, is a matter within the province of the fact finder, and not that of a reviewing court. U.S. v. Anderson, 189 F. 3d 1201, 1207 (10th Cir. 1999).

---

[4] Atkinson questions the weight that should be given to Bueter's testimony that Atkinson showed all six signs of impairment, three in each eye, under the Horizontal Gaze Nystagmus (HGN) test because Ranger Bueter failed to specify what these factors were. It is for the fact finder to determine what weight to afford the evidence.

AFFIRMED.

Entered for the Court


Mary Beck Briscoe
Circuit Judge