**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 20 2005**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

GERALD YAZZIE,

      Defendant - Appellant.

No. 04-2152

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.Ct. No. CR-02-2020-MV)**

---

Nina Goodman, United States Department of Justice, Criminal Division, Washington, D.C. (David C. Iglesias, United States Attorney, Albuquerque, New Mexico; Norman Cairns, Assistant United States Attorney, Albuquerque, New Mexico; with her on the briefs), appearing for Plaintiff-Appellee.

Charles R. Finley, Warner & Finley, Albuquerque, New Mexico, appearing for Defendant-Appellant.

---

Before **TACHA**, Chief Circuit Judge, **SEYMOUR**, **EBEL**, **KELLY**, **HENRY**, **BRISCOE**, **LUCERO**, **MURPHY**, **HARTZ**, **O'BRIEN**, **McCONNELL**, and **TYMKOVICH**, Circuit Judges.

---

**TACHA**, Chief Circuit Judge.

---

Defendant-Appellant Gerald Yazzie appeals his conviction and sentence for sexually assaulting a person under the age of twelve. He contends that the District Court erred in denying his motion to withdraw his guilty plea and that he should be resentenced in light of *United States v. Booker*, 543 U.S. —, 125 S. Ct. 738 (2005). We hold that the District Court did not abuse its discretion in denying the withdrawal of the guilty plea. We also hold, under plain-error review, that the District Court's mandatory application of the U.S. Sentencing Guidelines pursuant to 18 U.S.C. § 3553(b)(2), while erroneous, is not reversible. Therefore, we take jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(1) and AFFIRM.

## I. BACKGROUND

Mr. Yazzie ordered his live-in girlfriend's daughter, who is an Indian juvenile under the age of twelve, to perform fellatio on him. On November 13, 2002, a grand jury in New Mexico charged Mr. Yazzie with a single count of sexually assaulting an Indian juvenile who was less than twelve years old in violation of 18 U.S.C. § 2241(c) and 18 U.S.C. § 1153(a). Mr. Yazzie later pleaded guilty to the charge.

Before he was charged and pleaded guilty, however, Mr. Yazzie confessed to the FBI. As explained in more detail below, Mr. Yazzie later recanted his

admissions of guilt and moved to withdraw his plea. The District Court denied this motion.

At sentencing, the court concluded that Mr. Yazzie had "custody, care, or supervisory control" over the victim and applied a two-level enhancement under United States Sentencing Guidelines § 2A3.1(b)(3)(A) (2003) ("U.S.S.G." or "Guidelines"). Mr. Yazzie maintained that the girl was not in his custody at the time of this offense because she spent her afternoons—including the afternoon when this offense occurred—at his sister's house, under her supervision. Nonetheless, Mr. Yazzie also stated that he lived with the victim and her mother, that the victim called him her stepfather, and that he had disciplinary authority over her. The District Court concluded, based on these admissions, that the victim was in Mr. Yazzie's "custody, care, or supervisory control" within the meaning of U.S.S.G. § 2A3.1(b)(3)(A).

The two-level enhancement increased Mr. Yazzie's offense level from 31 to 33, and his criminal history placed him in Criminal History Category I. This combination yielded a sentencing range of 135 to 168 months' incarceration. *See* U.S.S.G. Ch.5, Pt.A. Under the non-enhanced range, Mr. Yazzie could have been sentenced to 108 to 135 months. The District Court sentenced him to 135 months—a sentence that falls within both ranges. Mr. Yazzie timely appealed.

## II. WITHDRAWAL OF THE PLEA

We initially address Mr. Yazzie's claim that the District Court erred in denying him leave to withdraw his guilty plea. When a defendant moves to withdraw a guilty plea prior to sentencing, the court must assess whether there is a "fair and just reason for withdrawal" in light of the following factors:

> (1) whether the defendant has asserted his innocence; (2) whether withdrawal would prejudice the government; (3) whether the defendant delayed in filing his motion, and if so, the reason for the delay; (4) whether withdrawal would substantially inconvenience the court; (5) whether close assistance of counsel was available to the defendant; (6) whether the plea was knowing and voluntary; and (7) whether the withdrawal would waste judicial resources.

*United States v. Sandoval*, 390 F.3d 1294, 1298 (10th Cir. 2004) (quotation marks omitted). "We review the district court's denial of a motion to withdraw a guilty plea for an abuse of discretion." *United States v. Jones*, 168 F.3d 1217, 1219 (10th Cir. 1999).

Mr. Yazzie attempted to withdraw his plea at a hearing on December 3, 2004. While testifying at that hearing, Mr. Yazzie recanted his confessions to the FBI. Mr. Yazzie had originally confessed to instructing the victim to perform fellatio, but during the hearing he disavowed the portion of his written confession indicating that he had used physical force to persuade the victim to do so. He claimed that he never made such a statement during his interview with the FBI,

but that he nevertheless included this detail in his written statement when an FBI agent told him to.

Later during the same hearing, however, Mr. Yazzie testified that he drank heavily on the day of the offense and that he had no recollection whatsoever about what occurred between him and the victim. Then, a moment after giving that testimony, Mr. Yazzie effectively denied his guilt altogether, maintaining that he never told the victim to perform any sexual act on him. Mr. Yazzie then explained that he gave his confession to the FBI, and subsequently pleaded guilty, because the FBI agents and defense counsel persuaded him that nobody would believe his claims of innocence. This assertion prompted defense counsel, Mr. Finzel, to ask the court to appoint a new lawyer for Mr. Yazzie and allow Mr. Yazzie to withdraw his plea.

The District Court granted Mr. Finzel's first request and appointed substitute counsel for Mr. Yazzie, and the new attorney filed a motion to withdraw Mr. Yazzie's plea. After a hearing, the court made the following findings with respect to the factors listed above:

(1) *assertion of innocence* – The court discussed at some length the inconsistencies among Mr. Yazzie's statements but did not expressly evaluate the credibility of any of these statements.

(2) *prejudice to the government* – The court found a potential for significant prejudice to the government because it would be difficult for the victim to testify so long after the offense occurred.

(3) *delay* – The court said it was "troubl[ed]" by "how late in the proceedings this matter has been asserted."

(4) *inconvenience to the court* – The court attached little weight to this factor.

(5) *close assistance of counsel* – The court said, "I have seen Mr. Finzel's assistance that he has provided to his clients, and have heard what he has done in this case, and the thorough way in which he communicated to the defendant what the pros and cons were of accepting a plea agreement, or going to trial."

(6) *voluntariness of the plea* – The court concluded that Mr. Yazzie's choice to enter a guilty plea was "a knowing and a voluntary decision."

(7) *waste of judicial resources* – The court attached little weight to this factor.

Based on these findings, the court denied Mr. Yazzie's motion to withdraw his plea.

Before this Court, Mr. Yazzie challenges all of the District Court's findings. His primary challenge, however, is to the voluntariness of his initial confession and guilty plea. Mr. Yazzie claims that he was coerced into pleading guilty because the FBI secured an unlawful confession from him and then Mr. Finzel told him that no jury would accept his protestations of innocence. Upon reviewing the record, we conclude that the evidence does not support this claim of coercion. Mr. Finzel testified at the plea withdrawal hearing—without contradiction—that he and Mr. Yazzie thoroughly reviewed Mr. Yazzie's options, including the possibility of attempting to have Mr. Yazzie's confession

suppressed. Moreover, Mr. Yazzie has never denied that he understood these options at the time he entered his plea. Under these circumstances, and in light of Mr. Yazzie's declaration under oath that he was entering his plea voluntarily because he was actually guilty, we hold that the District Court did not abuse its discretion in denying Mr. Yazzie's motion to withdraw his plea. *See Jones*, 168 F.3d at 1220.

### III. SENTENCING ERROR

Mr. Yazzie also contends that the District Court committed plain error under *Booker* by enhancing his sentence based upon judicial fact-finding. The finding in question—that Mr. Yazzie had care and custody over the victim—resulted in a two-level increase in Mr. Yazzie's offense level. *See* U.S.S.G. § 2A3.1(b)(3)(A). Although Mr. Yazzie did object on sufficiency of the evidence grounds below, this objection to the District Court's enhancement does not sufficiently preserve his claimed *Booker* errors. *United States v. Duncan*, 400 F.3d 1297, 1301 (11th Cir. 2005) (holding that raising sufficiency of the evidence as to a Guidelines enhancement does not preserve *Booker* error).[1] As a result, his appellate claim must be reviewed for plain error. *United States v. Gonzalez-*

---

[1] Our holding here does not disturb our previous ruling that objecting to an enhancement on Sixth Amendment grounds sufficiently preserves non-constitutional *Booker* error. *See United States v. Labastida-Segura*, 396 F.3d 1140, 1142–43 (10th Cir. 2005).

*Huerta*, 403 F.3d 727, 732 (10th Cir. 2005) (en banc).  "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings."  *United States v. Burbage*, 365 F.3d 1174, 1180 (10th Cir.) (quotation omitted), *cert. denied*, 125 S. Ct. 510 (2004).  We consider each prong of plain error in turn.

A.  Error

As we recently explained in *Gonzalez-Huerta*, *Booker* created two categories of error.  The first is constitutional error, which occurs when the district court applies the Guidelines in a mandatory fashion, makes factual findings (other than the fact of prior convictions), and imposes a sentence above the maximum that would apply in the absence of such findings.  *Gonzalez-Huerta*, 403 F.3d at 731.  Mr. Yazzie contends that, in light of *Booker*, it was constitutional error for the District Court to apply a higher Guidelines *range* based on the judge-found fact that he had custody and care over the victim pursuant to U.S.S.G. § 2A3.1(b)(3)(A).[2]  We disagree.

---

[2]  The Government agrees with Mr. Yazzie that we face a constitutional error here.  Nonetheless, we are not bound by a parties' stipulations regarding an error of law.  *Koch v. United States Dept. of Interior*, 47 F.3d 1015, 1018 (10th Cir. 1995).

*Booker* made clear that it is the actual sentence, not the sentencing range, that must not be increased based upon judge-found facts in order to violate the Sixth Amendment: "Accordingly, we reaffirm our holding in <u>Apprendi</u>: Any fact (other than a prior conviction) which is necessary to support *a sentence* exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Booker*, 125 S.Ct. at 756 (emphasis added). In this case, if the U.S.S.G. § 2A3.1(b)(3) enhancement had been omitted from the court's Guidelines computations, causing a reduction in Mr. Yazzie's offense level from 33 to 31, the applicable sentencing range would have been 108 to 135 months.[3] *See* U.S.S.G. Ch.5, Pt.A. Mr. Yazzie received a 135-month sentence—a sentence that the District Court could impose without making a § 2A3.1(b)(3)(A) enhancement. Therefore, constitutional error was not committed in this case. *See United States v. Payton*, — F.3d —, 2005 WL 1030462 at *3 (10th Cir. 2005) (holding in a *Booker* challenge that "[t]here was no constitutional error in sentencing [defendant] . . . . [,because t]he district court's finding that she possessed firearms did not increase her sentence beyond the maximum authorized by her plea . . . .

---

[3]The offense level of 31 derived from a base offense level of 27 for sexual abuse, enhanced by four levels because the victim was less than twelve years old at the time of the offense. *See* U.S.S.G. § 2A3.1(a), (b)(2)(A). The facts necessary to support the base offense level and the § 2A3.1(b)(2)(A) enhancement were charged in the indictment and admitted as part of Mr. Yazzie's guilty plea.

The judicially found facts[, therefore,] had no constitutionally significant impact on [defendant's] sentence."); *United States v. O'Flanagan*, 339 F.3d 1229, 1232 n.2 (10th Cir. 2003) (holding that the defendant could not raise a claim under *Apprendi v. New Jersey*, 530 U.S. 466 (2000)—which was an antecedent to *Booker*—because his sentence did not exceed the relevant statutory maximum).

The second type of *Booker* error, non-constitutional *Booker* error, occurs whenever the district court treats the Guidelines as mandatory rather than advisory in determining the defendant's sentence even though the "calculat[ion based] solely upon facts that were admitted by the defendant, found by the jury, or based upon the fact of a prior conviction" would support such a sentence. *Gonzalez-Huerta*, 403 F.3d at 732. The Supreme Court rendered the Guidelines advisory by excising 18 U.S.C. § 3553(b)(1) from the Sentencing Reform Act of 1984. *Booker*, 125 S. Ct. at 764. Here, because Mr. Yazzie was convicted of a sexual crime against an Indian minor 18 U.S.C. § 3553(b)(2), not § 3553(b)(1), is the governing sentencing statute.[4] The *Booker* Court, however, did not determine whether § 3553(b)(2) must be excised in order to remedy the Guidelines' underlying Sixth Amendment violations. Applying *Booker*'s reasoning, we hold that it must be excised as well.

---

[4]Section 3553(b)(2), rather than § 3553(b)(1), applies to offenses under chapters 109A. Mr. Yazzie pleaded guilty to violating 18 U.S.C. § 2241(c), which is an offense under chapter 109A.

Section 3553(b)(2) contains the same "shall impose" language that made application of the Guidelines mandatory under § 3553(b)(1).[5]  Because of this textual similarity, sentencing under § 3553(b)(2) raises the same Sixth Amendment concerns that the Supreme Court remedied by striking § 3553(b)(1). *See Booker*, 125 S. Ct. at 764.  Accordingly, we conclude that *Booker* also requires excising § 3553(b)(2).  *See United States v. Sharpley*, 399 F.3d 123, 127 n.3 (2d Cir. 2005) (stating, in dicta, that "we suspect that the Supreme Court's failure to excise the entirety of Section 3553(b) was simply an oversight.").[6] Therefore, we hold that treating the Guidelines as mandatory—regardless of whether the defendant is sentenced under § 3553(b)(1) or § 3553(b)(2)—is error.

---

[5]*Compare* 18 U.S.C. § 3553(b)(2) ("In sentencing a defendant convicted of an offense under section 1201 involving a minor victim, . . . the court *shall impose* a sentence of the kind, and within the range, referred to in [the guidelines] unless" enumerated mitigating circumstances exist.") (emphasis added); *with* 18 U.S.C. § 3553(b)(1) ("[T]he court *shall impose* a sentence of the kind, and within the range, referred to in [the guidelines] unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.") (emphasis added).

[6]  Mr. Yazzie's offense occurred before § 3553(b)(2) was enacted.  Because we hold that the Court's reasoning in *Booker* excises the mandatory application of § 3553(b)(2), we need not address any ex post facto concerns here.  Moreover, the record is not clear whether the District Court applied § 3553(b)(1), the applicable sentencing statute prior to the enactment of § 3553(b)(2), rather than § 3553(b)(2).  In any event, we need not determine which provision the court applied, because we hold that the mandatory application of either sub-section is error.

B.    Plain

Having found error, we must now determine whether the error is plain.  As we explained in *Gonzalez-Huerta*, "an error is 'plain' if it is clear or obvious at the time of the appeal, and *Booker* renders the error here both clear and obvious on appeal."  403 F.3d at 732 (internal citation omitted).  For the same reasons, we hold that the error in this case is "plain" as well.

C.    Fairness and Integrity of Judicial Proceedings

Next we turn our attention to the third and fourth prongs of plain-error review.  Under the third prong of plain-error review, Mr. Yazzie has "the burden to convince this Court, based on the record on appeal, that the error affected his substantial rights."  *Id*. at 733.  Nevertheless, we need not conduct this third-prong analysis here because even assuming Mr. Yazzie established that his substantial rights were affected, we hold that Mr. Yazzie does not satisfy the fourth prong of plain-error review (i.e., that failure to correct this forfeited error would seriously affect the fairness, integrity, or public reputation of judicial proceedings).  *See id.* at 736 (declining to conduct a substantial-rights analysis because defendant could not satisfy the fourth prong of plain-error review).  As we stated in *Gonzalez-Huerta*, "we will not notice a non-constitutional error, such as the one in the case before us, unless it is both particularly egregious and our failure to notice the error would result in a miscarriage of justice."  403 F.3d at

736 (quotation marks omitted). Mr. Yazzie bears the burden of demonstrating that the error in this case satisfies this demanding standard. *Id.* We hold that he has not met this burden.

The only argument forwarded by Mr. Yazzie is a citation to *United States v. Hughes*, 396 F.3d 374, 381 (4th Cir. 2005). We previously rejected this same argument as insufficient in *Gonzalez-Huerta*, noting that "[p]roviding this quotation is a far cry from establishing that a miscarriage of justice would occur if we do not remand." 403 F.3d at 737. We also noted that, on panel re-hearing, the Fourth Circuit issued a new fourth-prong analysis, which relies on the fact that "'Hughes was sentenced to a term of imprisonment nearly four times as long as the maximum sentence authorized by the jury verdict.'" *Id*. at 737 n.8 (quoting *United States v. Hughes*, 401 F.3d 540, 555 (4th Cir. 2005)). The Fourth Circuit's updated analysis is inapplicable here. We conclude, therefore, that Mr. Yazzie does not meet his fourth-prong burden.

Moreover, reviewing the record independently, we find no support for Mr. Yazzie's contention that the fourth prong is satisfied. When faced with non-constitutional *Booker* error, we held in *Gonzalez-Huerta* that the "fourth prong of plain-error review [is] only [met] in those rare cases in which core notions of justice are offended." *Id*. at 739. We recently decided one of these "rare cases," in which we held that the fourth prong was met when the defendant "presents a

compelling case that objective consideration of the § 3553(a) factors warrants a departure, and perhaps a significant departure, from the sentence suggested by the Guidelines." *United States v. Trujillo Terrazas*, — F.3d —, 2005 WL 880896 at *5 (10th Cir. 2005).

Affirming Mr. Yazzie's sentence does not offend core notions of justice. Because the District Court has already considered and rejected many of the § 3553(a) factors, we are not presented with a case like *Trujillo Terrazas* in which consideration of these factors warrants a significant departure from the sentence imposed. *See* R. Vol. 7 at 37–38. We therefore hold that Mr. Yazzie fails to satisfy the fourth prong of plain error because he has not met his burden to demonstrate that allowing his sentence to stand is either particularly egregious or otherwise constitutes a miscarriage of justice such that the fairness, integrity, or public reputation of judicial proceedings would be undermined.

## IV.  CONCLUSION

We hold that the District Court did not abuse its discretion in denying Mr. Yazzie's motion to withdraw his plea. We also hold that Mr. Yazzie's non-constitutional *Booker* challenge does not satisfy plain-error review. For the foregoing reasons, the judgment of the District Court is AFFIRMED.

**BRISCOE, J.,** concurring.

I agree with the majority that we must affirm the judgment of the district court. I write separately, however, because I disagree with the majority's analysis of Mr. Yazzie's claim that the district court violated his Sixth Amendment rights by enhancing his sentence pursuant to U.S.S.G. § 2A3.1(b)(3)(A) on the basis of judicially-found facts. In my view, the record in this case establishes that the district court applied the § 2A3.1(b)(3)(A) enhancement not on the basis of its own factual findings, but rather on the basis of Mr. Yazzie's admission of certain key facts. As a result, the enhancement was not imposed in violation of Mr. Yazzie's Sixth Amendment rights.

Section 2A3.1(b)(3) of the Sentencing Guidelines mandates a two-level enhancement for a crime involving criminal sexual abuse "[i]f the victim was . . . in the custody, care, or supervisory control of the defendant . . . ." Application Note 2 of the Commentary to § 2A3.1 outlines the broad scope of this enhancement:

> Subsection (b)(3), as it pertains to a victim in the custody, care, or supervisory control of the defendant, is intended to have broad application and is to be applied whenever the victim is entrusted to the defendant, whether temporarily or permanently. For example, teachers, day care providers, baby-sitters, or other temporary caretakers are among those who would be subject to this enhancement. In determining whether to apply this enhancement, the court should look to the actual relationship that existed between the defendant and the victim and not simply to the legal status of the defendant-victim relationship.

See U.S.S.G. § 2A3.1, comment., App. Note 2.

In applying § 2A3.1(b)(3)(A), the district court must engage in a two-step process. First, the district court must assess the nature of the relationship between the victim and the defendant. In doing so, the district court can rely on (a) facts admitted by the defendant, (b) its own factual findings, or (c) a combination of the two. In other words, this first step may or may not involve judicial fact-finding on the part of the district court. Second, the district court must then determine whether the underlying facts regarding the relationship between the defendant and the victim are such that they satisfy the broad definition of "custody, care, or supervisory control" outlined in § 2A3.1(b)(3)(A).[1]

In turn, the scope of our appellate review hinges on which part of the district court's application of § 2A3.1(b)(3)(A) is at issue. Obviously, any factual findings made by a district court regarding the nature of the relationship between the victim and the defendant would be reviewed by this court for clear error. See United States v. Doe, 398 F.3d 1254, 1257 (10th Cir. 2005) ("When reviewing a district court's application of the Sentencing Guidelines, . . . we review any factual findings for clear error"). However, whether the underlying facts fall

---

[1] For example, if a defendant convicted of criminal sexual abuse were to admit that he was a teacher and the victim was his student, a district court would be required to determine, given the language of Application Note 2, that the victim was in the "custody, care, or supervisory control" of the defendant for purposes of § 2A3.1(b)(3).

within the scope of § 2A3.1(b)(3)(A) is a mixed question of law and fact that primarily involves "the consideration of legal principles," i.e., the meaning of "custody, care, or supervisory control" as utilized in § 2A3.1(b)(3)(A). United States v. Hardridge, 379 F.3d 1188, 1192 (10th Cir. 2004). Moreover, the determination of whether a given set of facts establishes that a victim was in the "custody, care, or supervisory control" of a defendant for purposes of § 2A3.1(b)(3)(A) is one that can be made just as easily by this court as by a district court, and one in which an appellate determination will assist in clarifying the law. See Salve Regina College v. Russell, 499 U.S. 225, 233 (1991). Thus, we apply a de novo standard of review to that determination. See Hardridge, 379 F.3d at 1192.

Although these principles do not come directly into play (since Mr. Yazzie has not, aside from his Booker arguments, challenged the § 2A3.1(b)(3)(A) enhancement on appeal), they are nevertheless useful in demonstrating why there was no Sixth Amendment violation in this case. A review of the record in this case indicates that Yazzie testified under oath during the December 3, 2003 sentencing hearing and, under cross-examination by the prosecution, admitted that (a) he had lived with the victim and her mother since the victim was approximately four years old, (b) the victim called him her stepfather, and (c) he had disciplinary authority over the victim. ROA, Vol. 5, at 26-27. It does not

appear that the district court made any additional factual findings regarding the relationship between Yazzie and the victim. Instead, the district court utilized only those facts admitted by Yazzie in determining (correctly in my view) that the relationship between Yazzie and the victim fell within the scope of § 2A3.1(b)(3)(A). Thus, because the § 2B3.1(a)(3) enhancement was not based upon any judicial fact-findings, there was simply no Sixth Amendment violation, i.e., no constitutional <u>Booker</u> error.[2]  <u>See</u> <u>United States v. Booker</u>, 125 S.Ct. 738, (2005) (noting that a defendant's Sixth Amendment right to have a jury find any fact essential to his punishment "is implicated whenever a judge seeks to impose a sentence that is not solely based on facts reflected in the jury verdict or admitted by the defendant.") (internal quotations omitted).

The only remaining argument is Mr. Yazzie's assertion that the district court committed non-constitutional <u>Booker</u> error by applying the Sentencing Guidelines in a mandatory fashion, a claim that clearly was not encompassed

---

[2] By erroneously concluding that the district court engaged in judicial fact-finding, the majority in turn forces resolution of the difficult question of whether a constitutional <u>Booker</u> error occurs when a district court, applying the Guidelines in a mandatory fashion, increases a defendant's <u>sentencing range</u> on the basis of judicially-found facts. Although the majority's citation to <u>United States v. Payton</u>, — F.3d —, 2005 WL 1030462 (10th Cir. 2005), implies that this question has already been decided, that is simply not the case. In <u>Payton</u>, this court held only that non-constitutional <u>Booker</u> error does not occur when a district court imposes on a defendant the statutory minimum sentence applicable to her offense.

within any of the objections that he asserted to his sentence below. In light of this court's recent decision in <u>United States v. Gonzalez-Huerta</u>, 403 F.3d 727 (10th Cir. 2005), I agree with the majority that there is no basis for granting relief on this issue under the plain error framework.

**LUCERO**, Circuit Judge, concurring**.**

I concur in the judgment. For the reasons stated in my dissent in United States v. Gonzalez-Huerta, 403 F.3d 727, 761 (10th Cir. 2005) (en banc) (Lucero, J., dissenting), I disagree with the majority's analysis on the third and fourth prongs of the Olano plain-error test. Ordinarily, plainly erroneous sentences should be remanded to the district court for the limited purpose of determining whether the defendant was prejudiced. However, some cases are so clear that the defendant was not prejudiced by the district court's sentence that they bypass any necessity of remanding to the district court. Because the district court in this case denied a motion for downward departure, rejected mitigating evidence relevant to the § 3553(a) factors, expressed its view that the crime committed was quite serious, and because Yazzie does not present an argument on appeal that he would have made to influence the district court's discretion, I would conclude that the record is clear in this case that Yazzie was not prejudiced. Further demonstrating that he was not prejudiced, as Judge Briscoe notes in concurrence, Yazzie made statements that could be construed as admissions to the facts supporting the challenged enhancement. For these reasons I concur in the judgment.