F I L E D

PUBLISH

AUG 17 2004

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

THEDRAL R. HARDRIDGE,

Defendant - Appellant.

No. 03-3186

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. NO. 02-CR-20003-CM)

Brice R. Taylor of Taylor & Young, LLC, Kansas City, Missouri, for Defendant - Appellant.

Brent I. Anderson, Assistant United States Attorney (Eric F. Melgren, United States Attorney, with him on the brief), Wichita, Kansas, for Plaintiff - Appellee.

Before **HARTZ** , **McWILLIAMS** , and **McCONNELL** , Circuit Judges.

**HARTZ** , Circuit Judge.

Defendant Thedral Hardridge appeals his convictions on three counts of felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g) and

924(a)(2), and two counts of knowingly making a false statement (that he had no prior felony conviction) in connection with the purchase of a firearm, in violation of 18 U.S.C. § 922(a)(6). He contends that the district court, which tried him without a jury, erred in rejecting his estoppel defense to the felon-in-possession charges and in finding that he knowingly made false statements. The prior felonies forming the basis of all five federal charges are two state convictions for aggravated battery committed on May 27, 1995, when Defendant was 17. Defendant testified at his federal trial that he had believed his state convictions to be juvenile offenses and that he had been misled in that regard by various statements and actions by a firearms dealer, a state judge, and local law-enforcement officers. We exercise jurisdiction under 28 U.S.C. § 1291, and affirm.

I.    BACKGROUND

On October 10, 1995, Defendant pleaded guilty to two counts of aggravated battery in violation of Kansas law. He was prosecuted as an adult and sentenced to 39 months in Kansas state prison, which he served in an adult facility. He testified in his federal trial, however, that he had not been present at the state hearing adjudicating him as an adult and that his attorney had informed him that his conviction was a juvenile conviction, as he was underage at the time he committed the offense. As a result, he testified, he had believed that he had only

a juvenile conviction. At sentencing the state judge informed defendant that he was "prohibited from carrying a firearm upon your release," Aplt. App. I at 46, which Defendant asserts he interpreted to apply only during his two-year post-release supervision.

For some reason, the 1995 felony conviction was not entered into the National Crime Information Center (NCIC) database. Defendant discovered this in July 2000, when he requested a records check from the Kansas City, Kansas, Police Department to determine whether he had a criminal record. The report the department gave him of the records check under his name and birth date stated "no records found."

In January 2001 a Kansas City police officer found a firearm in an abandoned vehicle traced back to Mr. Hardridge. After running a criminal background check, which again came up with nothing, the police returned the firearm to Defendant. Defendant testified at trial that he believed the gun would not have been returned to him if his 1995 conviction did, indeed, count as a felony conviction.

In October and early November 2001, Defendant purchased guns from a local firearms dealer, the Bullet Hole in Overland Park, Kansas. When he purchased the guns, he did not declare his 1995 conviction on the Bureau of Alcohol, Tobacco and Firearms (ATF) forms 4473 required for the gun purchases.

He testified that the Bullet Hole salesmen told him that he need not declare any juvenile convictions. According to their records of the transactions, when employees at the Bullet Hole checked with the NCIC, they were instructed that the sale could proceed.

Defendant's luck ran out soon thereafter. On November 11, 2001, a Kansas City police officer found a firearm and ammunition inside Defendant's vehicle after he was stopped on an outstanding warrant. Two days later, responding to a domestic disturbance call, another Kansas City police officer found Defendant lying in his home with a self-inflicted gunshot wound to his face and a firearm a few feet away. Officers executing a search warrant for Defendant's home on November 17 found two additional firearms. On January 9, 2002, Defendant was indicted in the United States District Court for the District of Kansas on three counts of felon in possession of a firearm and two counts of knowingly making a false statement in connection with the purchase of firearms. After a bench trial on December 4, 2002, the court found Defendant guilty on all counts. The district court rejected Defendant's proffered defense of entrapment by estoppel to the felon-in-possession counts.

Defendant appeals, arguing that the district court erred in (1) ruling that his entrapment-by-estoppel defense would not lie on the facts shown; and (2) finding that he knowingly made false statements in applying to purchase firearms despite

his testimony that because of his lawyer's representations and the background checks by the local police and the Bullet Hole, he had actually believed when he filled out the ATF forms that his 1995 conviction had been a juvenile conviction. We reject these arguments.

## II.  DISCUSSION

### A.  Entrapment by Estoppel

Defendant argues that the actions of several actors representing various government entities misled him into believing that it was legal for him to purchase and possess firearms, thereby estopping the government from prosecuting him on the unlawful-possession counts.  Determining whether the government is estopped from a prosecution is generally a mixed issue of law and fact.  "We review mixed questions under the clearly erroneous or de novo standard, depending on whether the mixed question involves primarily a factual inquiry or the consideration of legal principles."  *United States v. Kinslow*, 105 F.3d 555, 557 (10th Cir. 1997) (internal quotation marks omitted).  Here, we assume Defendant's version of the facts and review the issues *de novo* as a matter of law.

A claim of entrapment by estoppel is at heart a due process challenge.  In *Raley v. Ohio*, 360 U.S. 423, 426 (1959), the Supreme Court held that the conviction of a defendant "for exercising a privilege which the State had clearly

told him was available to him" was an "indefensible sort of entrapment by the State," violative of due process. *Accord Cox v. Louisiana*, 379 U.S. 559, 571 (1965). To convict a citizen following such an "active misleading" would be to dispense with the basic requirement that citizens receive fair warning of what actions are criminal. *Raley*, 360 U.S. at 438.

In this circuit,

> The defense of entrapment by estoppel is implicated where an agent of the government affirmatively misleads a party as to the state of the law and that party proceeds to act on the misrepresentation so that criminal prosecution of the actor implicates due process concerns under the Fifth and Fourteenth amendments.

*United States v. Nichols*, 21 F.3d 1016, 1018 (10th Cir. 1994). There must be "an 'active misleading' by [a] government agent," and "actual reliance by the defendant[,]" which is "reasonable in light of the identity of the agent, the point of law misrepresented, and the substance of the misrepresentation." *Id*. Moreover, the government agent must be one who is "responsible for interpreting, administering, or enforcing the law defining the offense." *United States v. Gutierrez-Gonzalez*, 184 F.3d 1160, 1167 (10th Cir. 1999). Defendant bases his claim of entrapment by estoppel on representations made to him by (1) Bullet Hole personnel, (2) the state sentencing judge, and (3) local police officers. We address each in turn.

### 1.    Representations by Licensed Firearms Dealer

This circuit has not yet decided whether a licensed firearms dealer is a government agent for the purposes of establishing an entrapment-by-estoppel defense. *See id* at 1168. Defendant relies on *United States v. Tallmadge*, 829 F.2d 767, 770 (9th Cir. 1987). In that case the defendant's state felony conviction had been reduced to a misdemeanor. Allegedly in reliance on advice from the firearms dealer that the reduction made him eligible to do so, the defendant purchased a gun. A two-to-one majority of the Ninth Circuit panel allowed the defense, holding that such reliance could support a claim of entrapment by estoppel. *Id.* at 774. It reasoned:

> Clearly, the United States Government has made licensed firearms dealers federal agents in connection with the gathering and dispensing of information on the purchase of firearms. Under these circumstances, we believe that a buyer has the right to rely on the representations of a licensed firearms dealer, who has been made aware of all the relevant historical facts, that a person may receive and possess a weapon if his felony conviction has been reduced to a misdemeanor.

*Id.*

But the other circuits to address the matter have rejected *Tallmadge*. In *United States v. Howell*, 37 F.3d 1197, 1206 (7th Cir. 1994), the Seventh Circuit held that a "gun dealer . . . is a private individual [and] his license to sell firearms does not transform him into a government official." In *United States v. Austin*, 915 F.2d 363, 367 (8th Cir. 1990), the Eighth Circuit likewise held that a license to sell firearms does not "transform [pawn shop owners] into government

officials, at least for purposes of the entrapment by estoppel defense." And in *United States v. Billue*, 994 F.2d 1562, 1569 (11th Cir. 1993), the Eleventh Circuit held that "a federal license to sell firearms does not transform private licensees into government officials, thereby creating a potential entrapment by estoppel defense."

We agree with the majority view. *Tallmadge* stretches the holdings of *Cox* and *Raley* too far. In both cases the Court was concerned with the unique due process concerns raised when a government official in an unmistakable position of authority affirmatively misleads a citizen as to the propriety of contemplated actions. In *Raley* the chairman of the Ohio Un-American Activities Commission assured a group of citizens—later prosecuted for invoking the privilege against self-incrimination and refusing to answer Commission questions—that they could claim the privilege before the Commission. *Raley*, 360 U.S. at 437. The Court described the chairman as someone "who clearly appeared to be the agent of the State [of Ohio] in a position to give such assurances . . . ." *Id*. In *Cox* "the highest police officials of the city, in the presence of the Sheriff and Mayor, in effect told the demonstrators that they could meet where they did," but then tried to prosecute them for doing so. *Cox*, 379 U.S. at 571.

Employees of a private business licensed by the government are a far cry from the high-ranking government officials in *Cox* and *Raley*. Such licensees

-8-

cannot provide an *authoritative* interpretation of what the law requires. The Model Penal Code would restrict permissible reliance to "an official interpretation of *the public officer or body* charged by law with responsibility for the interpretation, administration or enforcement of the law defining the offense." MPC § 2.04(3)(b)(iv) (emphasis added).[1]  *See Tallmadge*, 829 F.2d at 776 n.1 (Kozinski, J., dissenting) (citing Model Penal Code). A licensee is highly unlikely to hold such status.

In some senses a licensed firearms dealer may be an "agent" of the federal government. But such a dealer is not "*responsible for* interpreting, administering, or enforcing the law defining the offense" within the meaning of that phrase in *Gutierrez-Gonzalez*, 184 F.3d at 1167 (emphasis added). To be sure, a licensed dealer must comply with certain federal requirements that assist in the

---

[1]MPC § 2.04(3) reads in full:

(3) A belief that conduct does not legally constitute an offense is a defense to a prosecution for that offense based upon such conduct when:
          (a) the statute or other enactment defining the offense is not known to the actor and has not been published or otherwise reasonably made available prior to the conduct alleged; or
          (b) he acts in reasonable reliance upon an official statement of the law, afterward determined to be invalid or erroneous, contained in (i) a statute or other enactment; (ii) a judicial decision, opinion or judgment; (iii) an administrative order or grant of permission; or (iv) an official interpretation of the public officer or body charged by law with responsibility for the interpretation, administration or enforcement of the law defining the offense.

administration of the firearms law. And compliance with that duty may require the dealer to interpret the law or to refuse to engage in a transaction (which might be considered "enforcing" the law against a prospective purchaser). But we distinguish between a duty to comply with the law and an official <u>responsibility</u> to interpret the law, to see that the law is being properly administered, or to enforce the law.

The reason to distinguish between government officials and private persons is not the reasonableness of reliance. Private citizens may often be reliable sources of information about the law. One feels a natural sympathy for a person who is prosecuted for an act after being assured by a licensed firearms dealer that the act is lawful. But due process requires that sympathy to be weighed against the needs of society. As we stated in *United States v. Browning,* 630 F.2d 694, 702 (10th Cir. 1980), "The only circumstances justifying use of the doctrine [of entrapment by estoppel] are those which add up to the conclusion that it does not interfere with underlying government policies or unduly undermine the correct enforcement of a particular law or regulation." Judge Kozinski began his *Talmadge* dissent with an observation we share:

> In reversing the conviction of a defendant who may have stumbled into criminal activity inadvertently, the court today reaches a just result. But it does so at too high a price, for this is a case where "justice to the individual is rightly outweighed by the larger interests on the other side of the scales."

-10-

*Tallmadge*, 829 F.2d at 775 (Kozinski, J., dissenting) (quoting Oliver W. Holmes, The Common Law 48 (1881)). To allow representations by firearms dealers to estop the government from prosecuting violations of the firearms law would be to give private individuals what amounts to a veto over enforcement of the criminal law. This is a burden society should not bear.

Moreover, where, as here, the alleged unfairness to the defendant arises out of private conduct and not from government action, it is not the *government* that has denied due process. *Cf. United States v. Orleans*, 425 U.S. 807, 815-17 (1976) (community action agency responsible for complying with federal regulations in carrying out federal contract not a government agency for purposes of liability under Federal Torts Claims Act; although "by contract, the Government may fix specific and precise conditions to implement federal objectives[, and] such regulations are aimed at assuring compliance with goals, the regulations do not convert the acts of entrepreneurs . . . into federal government acts"); *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 177 (1972) (liquor license does not render the sale of liquor by a private club a state action for purposes of the Fourteenth Amendment).

We therefore hold that licensed firearms dealers are not "government agents" for the purposes of an entrapment-by-estoppel defense.

### 2.    Statement by State Sentencing Judge

-11-

When Defendant was sentenced in state court in 1995, the trial judge told him:

> <u>Upon your release, it looks like you'll be on post-release supervision for a twenty-four month period of time, and that will – that – that can run concurrent with each other as far as the post-release is concerned</u>. The court costs and the attorney's fees are assessed against you. There is no restitution ordered in this case, because there has been none requested at this time. There – you will have a right to accumulate some good time credit, it's either fifteen or twenty percent, as far as that jail sentence is concerned. <u>You are prohibited from carrying a firearm upon your release</u>. I'm sure you probably already know that.

Aplt. App. I at 46 (emphasis added). Defendant contends that the two emphasized sentences misled him into believing that he could possess a gun after "he had completed the twenty-four[th] month of post-release supervision" because "[i]t was this release that [Defendant] believed the Judge was talking about." Aplt. Br. at 23. He claims that this belief was reinforced by the document stating the conditions of his post-release supervision, which included a prohibition on possessing dangerous weapons.

Defendant relies on *United States v. Brady*, 710 F. Supp. 290, 294 (D. Col. 1989), which held that a state judge's affirmative representations that a defendant with a felony conviction could possess firearms for limited purposes could estop the federal government from prosecuting him under the felon-in-possession statute. Authority in other circuits is to the contrary. *See United States v. Etheridge*, 932 F.2d 318 (4th Cir. 1991); *United States v. Bruscantini*, 761 F.2d

640 (11th Cir. 1985). But we need not resolve that dispute. Entrapment by estoppel cannot be predicated on the statement by the state judge in this case because Defendant could not have reasonably understood that statement as suggesting anything about the application of federal firearms law after his post-release supervision. *See Nichols*, 21 F.3d at 1018 ("The defendant alleges no affirmative representation or other 'active misleading' by any government agent that defendant was permitted to possess a firearm after his probation ended. Defendant testified only that his probation officer told him that, as a condition of his probation, defendant could not possess a weapon or go hunting while on probation. . . . [T]here is no factual predicate for a valid entrapment by estoppel defense.").

### 3.    Police Conduct and Statements

Defendant finally contends that the Kansas City Police Department misled him twice. First, he argues that when the Kansas City Police Department provided him with a criminal-history record check that omitted his 1995 conviction, this "supported [his] belief his previous conviction was a juvenile record." Aplt. Br. at 25. Second, he argues that he was misled when "the Kansas City[,] Kansas Police Department recovered [his] firearm from an abandoned vehicle and returned [it] to [him] after completing a background check." *Id.* at 26. The central difficulty with his reliance on either of these incidents is that the

Kansas City Police Department was not "a government official or agency responsible for interpreting, administering, or enforcing the law defining the offense," as entrapment by estoppel requires. *Gutierrez-Gonzalez*, 184 F.3d at 1167. The police department did not attain that status simply because it used a federal database to determine whether Defendant had a felony conviction. *See United States v. Ormsby*, 252 F.3d 844, 852 (6th Cir. 2001) (denying entrapment-by-estoppel defense based on issuance of gun permits by county sheriff's office, noting that "the use of information from the federal government in carrying out their responsibility to interpret state law does not constitute a grant of authority by the federal government to render advice concerning federal law").

### B.  Knowingly Making a False Statement

Under 18 U.S.C. § 922(a)(6), one may not "knowingly . . . make any false or fictitious oral or written statement" in filling out ATF form 4473. Defendant asserts that the district court erred in finding him guilty under this section, because he had shown that due to the representations of his lawyer, as well as the background checks run by the local police and the owner of the Bullet Hole, he had actually believed when he filled out the form that his 1995 conviction had been a juvenile conviction. In essence, he is challenging the sufficiency of the evidence against him. "We review the sufficiency of the evidence supporting a guilty verdict *de novo*. We will not disturb the verdict unless no rational trier of

fact could have found the defendant guilty [beyond a reasonable doubt]." *United States v. Tucker*, 305 F.3d 1193, 1204 (10th Cir. 2002) (internal citation omitted). "[We] must view the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the government." *Id.* (internal citation and quotation marks omitted).

The evidence at trial was sufficient to sustain a finding that Defendant knew he had been convicted of a felony when he completed the ATF forms. After all, he had been convicted as an adult and had served time in an adult facility. It would be remarkable if Defendant had been unaware that he had been prosecuted and sentenced as an adult. The very fact that Defendant sought a records check from the Kansas City Police Department suggests a sophistication about the matter that implies an intent to manipulate rather than a sincere effort to determine his status, which he could have obtained from a more definitive source familiar with his particular case.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment below.